722 P.2d 262

**Roy C. RENNER, Lawrence B. Colton, and Kofa Farms, Inc., an Arizona corporation, Plaintiffs-Appellees,**

v.

**Kenneth E. KEHL and Octavia L. Kehl, husband and wife, Lane Moyle and Jannette G. Moyle, husband and wife, dba K & M Farms, an Arizona partnership, Defendants-Appellants.**

No. CV–86–0111–PR.

Supreme Court of Arizona, En Banc.

June 25, 1986.

Engler, Engler & Weil by John A. Weil, Yuma, for plaintiffs-appellees.

Ronald F. Jones, Yuma, for defendants-appellants.

GORDON, Vice Chief Justice.

This Petition for Review was granted in order to determine the measure of damages available to the plaintiff upon rescission of a land contract. We have jurisdiction pursuant to Ariz. Const. art. 6 § 5(3) and Rule 23, Ariz.R.Civ.App.P., 17A A.R.S.

In 1981 the petitioners, defendants below, acquired from the State of Arizona agricultural development leases covering 2,262 acres of unimproved desert land near Yuma. The petitioners made no attempt to develop the property themselves, but instead decided to sell their interest in the land. The respondents, plaintiffs below, were residents of the state of Washington interested in the large scale commercial cultivation of jojoba. The respondents and their agent, who was familiar with commercial jojoba development, were shown the petitioners' property and became interested in purchasing it. The property appeared to be ideal for the respondents' purposes; the soil and climate were good and both parties were of the opinion that sufficient water was available beneath the land to sustain jojoba production. The respondents made it clear that they were interested in the property only for jojoba production and required adequate water supplies.

The respondents decided to buy the leases and on June 5, 1981, executed a Real Estate Purchase Contract to that effect. Respondents agreed to pay $222,200 for the leases, and paid petitioners $80,200 as a down payment, the remainder to be paid in annual installments. In November of 1981 respondents began development of the property for jojoba production. As part of the development process the respondents had five test wells drilled, none of which produced water of sufficient quantity or quality for commercial jojoba cultivation. After spending approximately $229,000 developing the land respondents determined that the aquifer underlying the property was inadequate for commercial development of jojoba. At this point the project was abandoned and the respondents sued to rescind the purchase contract. The petitioners counterclaimed for the balance of payments due under the contract.

The case was tried before the court between October 25 and October 27, 1983, and the trial court entered Findings of Fact, Conclusions of Law, and an Order on January 9, 1984. The court found that the respondents were entitled to rescission based on mutual mistake of fact and failure of consideration, and ordered the respondents to reassign the lease to the petitioners. The petitioners were ordered to pay the respondents $309,849.84 ($80,200 representing the down payment and $229,649.48 representing the cost of developing the property) together with costs and attorney's fees.

The petitioners appealed to the court of appeals, which affirmed the trial court by memorandum decision. *Renner v. Kehl*, 1 CA–CIV 7749 (filed December 17, 1985). The petitioners raise the same arguments before this Court, *viz.*, that rescission was not justified, or if rescission was appropriate petitioners are not liable for consequential damages.

## RESCISSION

 Mutual mistake of fact is an accepted basis for rescission. *Amos Flight Operations, Inc. v. Thunderbird Bank,*

112 Ariz. 263, 540 P.2d 1244 (1975); *Mortensen v. Berzell Investment Company,* 102 Ariz. 348, 429 P.2d 945 (1967). *See* Restatement (Second) of Contracts § 152. In Arizona a contract may be rescinded when there is a mutual mistake of material fact which constitutes "an essential part and condition of the contract." *Mortensen v. Berzell Investment Company,* 102 Ariz. at 350, 429 P.2d at 947. The trial court found that the sole purpose of the contract was to enable respondents to grow jojoba, which depends upon an adequate water supply. The trial court specifically found that "There would have been no sale if both sellers and buyers had not believed it was possible to grow jojoba commercially on the leased acres...." and that "[b]ased upon the factual data available, all parties were of the opinion that there would be sufficient good quality water for commercial jojoba production, and that it would be close enough to the surface that it would be economically feasible to pump it for irrigation of large acreages." Consequently, the trial court concluded that "[p]laintiffs are entitled to rescind the purchase agreement because of the mutual mistake of fact and because there was a total failure of consideration."[1]

■ The belief of the parties that adequate water supplies existed beneath the property was "a basic assumption on which both parties made the contract," Restatement (Second) of Contracts § 152 comment b, and their mutual mistake "ha[d] such a material effect on the agreed exchange of performances as to upset the very bases of the contract." *Id.* comment a. The contract was therefore voidable and the respondents were entitled to rescission.[2]

## DAMAGES

■ The trial court also ordered that petitioners pay the respondents $309,849.84 together with costs and attorney's fees. Of the $309,849.84 awarded to the respondents, $229,649.84 represents reimbursement of the costs borne by the respondents in developing the property for jojoba production. The petitioners challenge the $229,649.84 awarded as an improper grant of "consequential damages".[3]

The court of appeals upheld the full award "[b]ecause the plaintiffs have not received a double recovery in the award of rescission and consequential damages...." Slip op. at 4. The appeals court relied upon *Fousel v. Ted Walker Mobile Homes, Inc.,* 124 Ariz. 126, 602 P.2d 507 (App.1979), for the proposition that rescission can support an award of consequential damages.

In *Fousel* the plaintiffs purchased a mobile home from the defendants, who engaged in a series of misrepresentations which cost the plaintiffs considerable inconvenience and expense. The plaintiffs prevailed upon their claim for fraud and

---

1. The petitoner challenges the sufficiency of the evidence in support of the trial court's conclusions of fact and law, but failed to provide a record of the trial. The obligation for a complete record on appeal clearly lies with the appellant. *Visco v. Universal Refuse Removal Company,* 11 Ariz.App. 73, 462 P.2d 90 (1969); Rule 11(b), Ariz.R.Civ.App.P. Without a record we must presume that the trial court properly exercised its discretion and that there was substantial evidence in the complete record to support the findings of the trial court. *Auman v. Auman,* 134 Ariz. 40, 653 P.2d 688 (1982); *Visco v. Universal Refuse Removal Company, supra.*

2. The failure of the parties to make a thorough investigation of the water supply prior to signing the contract does not preclude rescission where the risk of mistake was not allocated among the parties and the mistake is material and relates to a basic assumption on which the contract was made. Restatement (Second) of Contracts § 152 comment a. *See id.,* illustration 1:

 "A contracts to sell and B to buy a tract of land, the value of which has depended mainly on the timber on it. Both A and B believe that the timber is still there, but in fact it has been destroyed by fire. The contract is voidable by B."

3. Consequential or "incidental" damages represent a plaintiff's expenses incurred in reliance upon the contract. *See Fousel v. Ted Walker Mobile Homes, Inc.,* 124 Ariz. 126, 602 P.2d 507 (App.1979). In *Fousel* these expenses included the cost of custom-made awnings, skirting and steps purchased for their mobile home, *see* discussion, *infra;* in this case they would represent the cost of developing the land for jojoba production.

breach of contract and were awarded $2,705.26 in consequential damages and $10,000 in punitive damages. The sole issue on appeal was whether any damages could be awarded where the plaintiffs elected to sue for rescission. The court of appeals held that the doctrine of election of remedies does not necessarily bar an award of consequential or punitive damages, only "benefit of the bargain" damages. 124 Ariz. at 129, 602 P.2d at 510; *see Jennings v. Lee*, 105 Ariz. 167, 461 P.2d 161 (1969) (election of remedies). However, *Fousel* was predicated upon proof of breach of contract for fraud. The court stated that a party who has rescinded a contract may recover "any incidental or consequential damages resulting from *a breach of the contract*." 124 Ariz. at 129, 602 P.2d at 510 (emphasis added). The court quoted from *Jennings v. Lee, supra,* wherein we stated that "[t]here is ample authority that a *defrauded* party may not only receive back the consideration he gave, but also may recover any sums that are necessary to restore him to his position prior to the making of the contract." 105 Ariz. at 173, 461 P.2d at 167, cited at 124 Ariz. 129, 602 P.2d 510 (emphasis added).

In this case there was no breach of contract for fraud. We are dealing with a rescission based upon mutual mistake, which implies freedom from fault on the part of both parties. *See* Restatement (Second) of Contracts § 152. There was no determination that fraud or misrepresentation occurred; indeed, the trial court concluded that "[t]here was no fraud or misrepresentation on the part of the defendants or their agents...." The reliance of the court of appeals upon *Fousel* was misplaced; we hold that absent proof of breach for fraud or misrepresentation a party who rescinds a contract may not recover consequential damages. Accordingly, we reverse that portion of the trial court's order awarding consequential damages and vacate that portion of the court of appeals' decision which affirms the award of consequential damages.

This does not mean, however, that the respondents are entitled only to recover their down payment. When a party rescinds a contract on the ground of mutual mistake he is entitled to restitution for any benefit that he has conferred on the other party by way of part performance or reliance. Restatement (Second) of Contracts § 376. Restitutionary recoveries are not designed to be compensatory; their justification lies in the avoidance of unjust enrichment on the part of the defendant. D. Dobbs, *Remedies* § 4.1 p. 224 (1973). Thus the defendant is generally liable for restitution of a benefit that would be unjust for him to keep, even though he gained it honestly. *Id;* Restatement (Second) of Contracts § 376 comment a. The issue we must now address is the proper measure of the restitutionary interest.

The first step determining the proper measure of restitution requires that the rescinding party return or offer to return, conditional on restitution, any interest in property that he has received in the bargain. Restatement (Second) of Contracts § 384(1)(a). In Arizona this includes reimbursement for the fair market value of the use of the property. With respect to land contracts we have noted that "[i]t is of course essential to justify the rescinding of a contract that the rescinding party offer to place the other in status quo, and this includes the offer to credit the vendors with a reasonable rental value for the time during which the land was occupied." *Mortensen v. Berzell Investment Company,* 102 Ariz. at 351, 429 P.2d at 948. Earlier we stated that "[t]he offer to surrender possession of property received under the contract need not be unqualified, but may be made conditional upon the vendor's restitution of amounts paid on the contract, less proper allowances in respect of vendee's use of the premises." *Mahurin v. Schmeck,* 95 Ariz. 333, 341, 390 P.2d 576, 581 (1964). Thus the respondents were obliged to return the land to the petitioners in exchange for their down payment, and in addition to pay the petitioners the fair rental value of the land for the duration of their occupancy.

However, to avoid unjust enrichment the petitioners must pay the respondents a sum equal to the amount by which their property has been enhanced in value by the respondents' efforts. The Restatement (Second) of Contracts § 376 provides that "[i]f [a party] has received and must return land ... he may have made improvements on the land in reliance on the contract and he is entitled to recover the reasonable value of those improvements.... The rule stated in this section applies to avoidance on any ground, including ... mistake...." comment a. The reasonable value of any improvements is measured by "the extent to which the other party's property has been increased in value or his other interests advanced." Restatement (Second) of Contracts § 371(b). Thus the petitioners must pay to the respondents that amount of money which represents the enhanced value of the land due to the respondents' development efforts. In short, the respondents are entitled to their down payment, plus the amount by which their efforts increased the value of the petitioners' property, minus an amount which represents the fair rental value of the land during their occupancy. They are not entitled to the $229,649.84 expended upon development, because that would shift the entire risk of mistake onto the petitioners, which is incompatible with equitable rescission.

## CONCLUSION

The respondents were entitled to rescind the contract, but may not recover the costs of developing the land in the form of consequential damages. The respondents are entitled to restitution of their down payment and any amount by which the value of the land was enhanced, but in turn the respondents must pay petitioners the fair rental value of the tenancy. Accordingly, the trial court is affirmed in part and reversed in part and the court of appeals' decision is approved in part and vacated in part. The case is remanded to the trial court for further proceedings not inconsistent with this opinion.

HOLOHAN, C.J., and HAYS, CAMERON and FELDMAN, JJ., concur.